## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WISCONSIN

Thomas Vogedes,

    Plaintiff,

    v.                                           Case No. 22-cv-360.

Lincoln County and
Jodie Wilhelm, Jordan Oelke,
Jessica Steenweg, Shane Fendos,
Nick Hoeft, Jennifer Timm,
Tyler Kopetzky, and
One Unknown Correctional Officer

Each in his or her individual capacity,

    Defendants

## COMPLAINT

### I.    NATURE OF ACTION

101.   This is a civil action brought by the Plaintiff, Thomas Vogedes, pursuant to 42 U.S.C. § 1983, in order to obtain damages for the injuries he sustained as a result of the Defendants' failure to protect him from foreseeable harm at the hands of a known violent inmate while he was incarcerated at the Lincoln County Jail, in violation of the Fourth and Eighth Amendments to the United States Constitution.

## II. JURISDICTION AND VENUE

201. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343(a)(3) (42 U.S.C. § 1983 jurisdiction).

202. The Western District of Wisconsin is the proper venue for this action because the Plaintiff's claims arose within the geographical boundaries of the Western District of Wisconsin within the meaning of 28 U.S.C. § 1391(b).

## III. PARTIES

A. <u>Plaintiff</u>

301. The Plaintiff is an adult resident of Wisconsin.

302. The Plaintiff was incarcerated during the acts complained of, but at the time of the filing of this Complaint, he is not incarcerated.

B. <u>Defendant</u>

303. The Defendant Lincoln County is a Wisconsin unit of local government with the capacity to sue and be sued in this court.

304. On information and belief, Defendants Jodie Wilhelm, Jordan Oelke, and Nick Hoeft are adult residents of Wisconsin.

305. At the times relevant to the conduct asserted in this lawsuit, Defendants Wilhelm, Oelke, and Hoeft were employed by Lincoln County as sergeant correctional officers at the Lincoln County Jail.

306. On information and belief, Defendants Jessica Steenweg, Shane Fendos, Jennifer Timm, and Tyler Kopetzky are adult residents of Wisconsin.

307. At the times relevant to the conduct asserted in this lawsuit, Defendants Steenweg, Fendos, Timm, and Kopetzky were employed by Lincoln County as correctional officers at the Lincoln County Jail.

308. At all times relevant to this lawsuit, in regard to the conduct complained of herein, each individual Defendant was acting within the scope of his/her employment within the meaning of §895.46 Wis. Stats.

309. At all times relevant to this lawsuit, in regard to the conduct complained of herein, each individual Defendant was acting under color of state law within the meaning of 42 U. S. C. § 1983.

310. Lincoln County is responsible to defend and indemnify the individual Defendants pursuant to Wisconsin Statute § 895.46.

## IV.  ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

401. On November 7, 2020, Thomas Vogedes was arrested and held in custody at the Marathon County Jail, pending trial on new charges and revocation of his extended supervision.

402. On January 15, 2021, while still a pretrial detainee, Mr. Vogedes was transferred to the Lincoln County Jail.

403. At the Lincoln County Jail, Mr. Vogedes was housed in Cell K-03 with Hervey Mesta, another inmate who had been transferred from Marathon County Jail.

404. Mr. Mesta was hostile toward Mr. Vogedes.

405. Fearing trouble due to Mr. Mesta's hostility toward him, Thomas Vogedes tried several times, outside the hearing of Hervey Mesta, to persuade correctional officers to separate him from Mr. Mesta.

406. In a private conversation during a morning medication pass, he spoke with Sergeant Jodie Wilhelm and requested that she move him out of the cell, saying he was concerned for his safety around Hervey Mesta.

407. Sgt. Wilhelm declined to approve his transfer to another cell, explaining that they preferred to keep the inmates who had transferred from Marathon County together.

408. During an evening medication pass, Mr. Vogedes spoke privately with Sergeant Jordan Oelke and asked her to move him away from Hervey for his own safety.

409. Sgt. Oelke asked why, seeing as they had been together for some time, and Mr. Vogedes responded that, at this point, Mesta had become a "ticking time bomb."  Sgt. Oelke made no response to this, and again Mesta was not moved.

410. On January 24, 2021, Mr. Mesta filed a "kite" that said, "I would like to be moved from my current cell do [sic] to the fack [sic] of me and my celly not getting along.  We are close to fighting and I would like to reframe [sic] from geting [sic] any more charges or just getting in truble [sic]."

411. A copy of Mr. Mesta's January 24, 2021, request to be moved is attached as Exhibit A.

4

412. Mr. Mesta's kite was received by Lincoln County Jail Correctional Officer Jessica Steenweg who was working the night shift.

413. After receiving Mr. Mesta's communication, Officer Steenweg came to the cell occupied by Mr. Vogedes and Mr. Mesta, told Mesta to pack up his stuff because he was being moved, and removed Hervey Mesta from the cell.

414. Within 15 minutes, Mr. Mesta was back.

415. Mr. Mesta told Mr. Vogedes that Officer Steenweg had been going to put him in "max," but he talked his way out of it.

416. What is commonly referred to as "max" at the Lincoln County Jail is a separate cell block where the cells are single occupancy and where staff's observation of the inmates is more concentrated.

417. Upon learning that he would still be celled with Mr. Mesta, Mr. Vogedes, who was then locked in the cell with Mr. Mesta, pushed the emergency button and spoke to Officer Shane Fendos in the control center.

418. Mr. Vogedes asked Officer Fendos, if they were not going to move Mesta to max, could they move him (Vogedes) to max instead.

419. Officer Fendos replied that they were not going to move anyone.

420. Later that night, Officer Steenweg came by, doing her regular rounds of the cells, and Mr. Vogedes asked her to move him to max.

421. She responded that she would have to "check with Nick," meaning Sergeant Nick Hoeft.

422. Later Sgt. Hoeft came through making rounds, and Mr. Vogedes asked him if he could be taken to max for his own safety.

423. Sgt. Hoeft said that they were not moving anyone at this time.

424. On January 26, 2021, while the inmates in Cellblock K were eating their lunch in the dayroom, Mr. Mesta became violently angry and threw his tray of food against the windows and wall of the dayroom.

425. As a result, Correctional Officers Jennifer Timm and Tyler Kopetzky handcuffed Mr. Mesta and took him to a holding cell in the booking area for what Vogedes assumed would be a transfer to the maximum security block.

426. When this happened, Tom Vogedes was relieved because he thought he would be safe with Mr. Mesta locked away on another cell block.

427. However, in spite of his violent outburst, a short time later, Officers Timm and Kopetzky allowed Mr. Mesta to return to the cell he shared with Mr. Vogedes.

428. They had determined that the only discipline Mr. Mesta was required to experience would be a "twenty-four hour room confinement," meaning he was ordered to be locked into the cell that he shared with Mr. Vogedes for twenty-four hours.

429. Ordinarily, correctional officers would accompany an inmate to his cell when he was ordered to room confinement to ensure that he did in fact lock in to his cell.

430. However, in this case, Officers Timm and Kopetzky allowed Mr. Mesta to return to his cell unaccompanied.

431. Upon his return from the holding area, Mr. Mesta was angrier than ever.

432. Mr. Vogedes was in the dayroom playing cards with another inmate when Mr. Mesta came boiling out of their cell, screaming at him.

433. Mr. Vogedes stood as Mr. Mesta approached him, and Mr. Mesta began punching him.

434. Mr. Vogedes fell to the floor, injured, and Mr. Mesta began kicking him in the face.

435. Mr. Vogedes tried to protect his face, and Mr. Mesta began jumping on Vogedes's back.

436. The correctional staff eventually pulled Mesta off Mr. Vogedes and restrained him.

437. Later that afternoon, Mr. Mesta had to be placed into the restraint chair.

438. When the staff pulled Mr. Mesta off Tom Vogedes and helped him to his feet, Mr. Vogedes had blood pouring from his face.

439. The jail nursing staff was called to assess him, and Mr. Vogedes was taken to Ascension Good Samaritan Emergency Department.

440. At Ascension Good Samaritan, Mr. Vogedes was diagnosed with comminuted displaced fractures involving the right inferior and medial orbital

walls with angulated fracture fragments and osseous depression measuring up to 7 mm in diameter and right-side proptosis.

441. Because his injuries were so extensive, Mt. Vogedes was transported by ambulance to Aspirus Hospital in Wausau where he was admitted.

442. Tom Vogedes had broken bones in his face, including fractures to his right eye orbit.

443. When the swelling around his eye subsided enough for a full ophthalmic evaluation, he was found to be suffering from diplopia (double vision).

444. While Tom Vogedes was in the custody of Lincoln County Jail in January, 2021, his status was that of a pretrial detainee.

445. In addition to the blatant red flags showing that Tom Vogedes was in danger, enumerated above, Hervey Mesta had assaulted other inmates at the Lincoln County Jail prior to being moved into Tom Vogedes' cell.

446. Each inmate who enters the Lincoln County Jail is assessed to establish the appropriate security classification for that inmate and to determine the appropriate unit for the inmate to be housed.

447. One Unknown Correctional Officer who performed the security classification on Mr. Mesta, who had a history of violence and should have been classified as a maximum security inmate and housed in a secure setting, was indifferent to the threat that Mesta posed to other inmates, including to Tom Vogedes, when he placed Mr. Mesta in general population.

## V. VIOLATIONS OF LAW

501. The unreasonable conduct and deliberate indifference of the Defendants in failing to keep Thomas Vogedes safe, despite having been aware that he was in imminent danger of an attack from his violent cellmate, violated Mr. Vogedes's right to be free from cruel and unusual punishment and from unreasonable seizure, as guaranteed by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

## VI. DAMAGES

601. As a result of the Defendants' unreasonable conduct and deliberate indifference to his safety, the Plaintiff has suffered a violation of his constitutional rights, for which he seeks compensatory damages.

602. As a result of the Defendants' unreasonable conduct and deliberate indifference to his safety, the Plaintiff has suffered extensive physical injury as well as permanent disability, pain, and emotional distress, for all of which he seeks compensatory damages in an amount deemed just by the Court.

603. Because the conduct of the Defendants alleged herein was carried out with reckless disregard for the Plaintiff's fundamental rights, the Plaintiff also seeks an award of punitive damages against the individual Defendants to

deter them, and others similarly situated, from similar wrongful acts in the future.

## VII.   CONDITIONS PRECEDENT

701.   All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## VIII.   DEMAND FOR JURY TRIAL

801.   The Plaintiff hereby demands a trial by jury of all issues triable of right to a jury.

## IX.   PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that the Court grant judgment against the Defendant, awarding him:

901.   Monetary damages in an amount that will fairly compensate the Plaintiff for his injuries, and

902. His costs, attorneys' fees and litigation expenses as well as any further relief this Court deems just.

Dated this 30th day of June, 2022

Respectfully submitted,

Thomas Vogedes, Plaintiff,

By

THE JEFF SCOTT OLSON LAW FIRM, S. C.
ATTORNEYS FOR PLAINTIFF
Jeff Scott Olson
State Bar Number 1016284
1025 Quinn Drive, Suite 500
Waunakee, WI 53597
Phone   (608) 283-6001
Fax      (608) 283-0945
Email    JSOlson@scofflaw.com


        /s/ Jeff Scott Olson
_____

Jeff Scott Olson